# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GLOUCESTER FISH EXCHANGE, INC.,

Plaintiff,

v.

GARY LOCKE, SECRETARY OF
COMMERCE, UNITED STATES
DEPARTMENT OF COMMERCE /
NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION AND
UNITED STATES OF AMERICA,

Defendants.

Civil Action No.: 09-cv-10694-DPW

**GOVERNMENT DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S
APPLICATION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY
INJUNCTION AND MOTION TO DISMISS COUNT'S II AND III OF PLAINTIFF'S
PETITION FOR REVIEW OF ADMINISTRATIVE DECISION
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Federal Defendants ("Defendants" or "Government") oppose the Plaintiff, Gloucester

Fish Exchange's ("GFX"), Application for Temporary Restraining Order / Preliminary Injunction

(Docket Nos. 5 and 6) ("PI") and Counts II and III of GFX's Amended Petition For Review of

Administrative Decision and Verified Complaint for Injunctive Relief ("Amended Petition")

(Docket No. 4).[1]  As explained below, GFX's PI should be denied and Count's II and III of the

Amended Complaint should be dismissed for failure to state a claim upon which relief may be

granted, because the GFX has failed to meet its burden for obtaining injunctive relief or asserting

an actionable claim for relief.

---

[1]      This opposition only covers the 10-day sanction referenced in Paragraph 101 of
GFX's Amended Petition and does not cover the challenge to the agency decision of April 1,
2009.

**I**
**RELEVANT FACTS AND PROCEDURAL HISTORY**

1.      On November 6, 2002, the National Oceanic and Atmospheric Administration

("NOAA"),  National Marine Fisheries Service ("NMFS") served GFX  with a Notice of

Violation and Assessment ("2002 NOVA") charging the GFX with 24 counts of fisheries

violations occurring between July 25, 2000, and September 1, 2000.  Exhibit A - 2002

NOVA.  The 2002 NOVA charged that the GFX purchased Atlantic cod illegally retained

in excess of landing limits on 9 different occasions involving 20,691 pounds of cod, and

that the GFX submitted 35 false records to the Agency during this time, which were

charged in a total of 24 counts .  *Id.*  The GFX was assessed a civil penalty of $125,000.

*Id.*  On November 6, 2002, The GFX was also served with a Notice of Permit Sanction ("

2002 NOPS"), suspending its dealer permit for 60 days.  Exhibit B – 2002 NOPS.

2.      On September 12, 2003, the GFX entered into a settlement agreement with NOAA to

resolve the 2002 NOVA charges and the 2002 NOPS suspension (2003 Settlement

Agreement"), without and administrative hearing and waiving all rights of appeal.

Exhibit C – 2003 Settlement Agreement (*see also* Exhibit F to GFX Amended Petition,

Docket No. 4).[2]

3.      Under the 2003 Settlement Agreement the GFX: (1) admitted to the violations alleged in

the 2002 NOVA (except for count 24) (Exhibit C, ¶ 1); (2) agreed to pay NOAA a civil

penalty of $80,000 (Exhibit C, ¶ 2); (3) agreed to serve a 15-day dealer permit sanction,

subject to conditions noted in the paragraph below (Exhibit C, ¶ 3); and (4) waived all

---

[2]

rights of appeal (Exhibit C, ¶¶ 2, 6, 7).

4.      Paragraph 3 of the 2003 Settlement Agreement states that:

The respondent, Gloucester Fish Exchange, Inc. agrees to a fifteen-day permit
sanction.  Five days of the sanction shall begin at 0001 hours on December 23,
2003, and continue until 2400 hours on December 27, 2003.  During this five-day
period, the respondents shall not purchase, possess, or receive any federally
regulated species. The remaining ten-days of the sanction are suspended for a
one-year probation period beginning on the effective date of this Agreement and
shall remain suspended contingent on the respondents successfully completing the
five-day sanction above and not committing any substantial violation of any
federal fishery statute or regulation.  A substantial fishery violation will be
deemed to have occurred as of the effective date of a settlement agreement or the
effective date of a final administrative decision (as defined at 15 C.F.R Part 904)
in which any of the respondents is liable for a civil penalty of $10,000 or more for
any violation having been committed on any date within the probation period. If
any substantial fishery violation is deemed to have occurred, Gloucester Fish
Exchange, Inc.'s federal dealer permit will be sanctioned immediately for ten days.
In such an instance, the permit sanction will remain in effect until the full 10-day
sanction is served.  During any such sanction, the respondents may not purchase,
possess, or receive for a commercial purpose any federally regulated species.  In
the event of any such violation is deemed to have occurred, the respondents
hereby waive all rights to notice, presentment, or demand by NOAA concerning
the permit sanction to be imposed.

Exhibit C, ¶ 3.

5.      On February 11, 2004, six months after entering the 2003 Settlement Agreement, the

GFX was investigated for maintaining a false record that omitted cod that was landed in

excess of the allowable landing limit.  GFX Amended Petition, ¶ 8.

6.      On March 7, 2005, NOAA issued a NOVA charging the GFX with maintaining a false

record that omitted concealed the amount of illegal cod that was possessed ("2005

NOVA").  *Id.*  A civil penalty of $120,000 was assessed, and a 90-day permit sanction

NOPS was issued ("2005 NOPS").  GFX Amended Petition, ¶¶ 8–11.

7.      On November 14, 2008, after a lengthy administrative adjudication pursuant to NOAA

3

fisheries enforcement regulations at 15 C.F.R. Part 904, an Administrative Law Judge ("ALJ") issued a Supplemental Decision After Remand ("Supplemental Decision") upholding NOAA's 2005 NOVA charge, but reducing the assessed penalty to $10,000 and the permit sanction to a 20-day permit suspension to be served in two-day increments over a 1 year period.  GFX Amended Petition, Exhibit C; *see also* GFX Amended Petition, Exhibit B.

8.    On April 1, 2009, after both NOAA and GFX cross appealed to the Administrator of NOAA for discretionary review of the Supplemental Decision pursuant to 15 C.F.R. § 904.273, the Administrator of NOAA upheld the Supplemental Decision and denied GFX's and NOAA's cross appeals for discretionary review.  GFX Amended Petition, Exhibit D – Order Denying Discretionary Review.

9.    The NOAA Administrator's Denial of Discretionary Review constituted the final administrative decision for the 2005 NOVA and 2005 NOPS.  *Id.*; 15 C.F.R. § 904.2[3]

10.   On June 19, 2009, the NOAA Office of General Counsel / Northeast Region ("GCNE"), notified GFX that the NOAA Administrator's Denial of Discretionary Review was a final administrative decision.  The notice referenced Paragraph 3 of the 2003 Settlement Agreement deeming the occurrence of a substantial fishery violation which GFX is liable for with respect to a violation having been committed within the one year probation period following the execution of the 2003 Settlement Agreement.  GFX Amended

---

[3]    Under 15 C.F.R. § 904.2, a final administrative decision is defined as "an order or decision of NOAA assessing a civil penalty or permit sanction which is not subject to further Agency review under this part, and which is subject to collection proceedings or judicial review in an appropriate Federal district court as authorized by law."

Petition, Exhibit E.  The GCNE notice stated that pursuant to the 2003 Settlement Agreement GFX was obligated to abide by the terms of the 2003 Settlement Agreement and serve the suspended 10-day permit sanction.  *Id.*  To ensure an orderly process the GCNE notice directed the GFX to inform GCNE by June 24, 2009, of any legal claim as to why the 10-day sanction should not go into effect immediately.  *Id.*

11.   On June 24, 2009, the GFX served the government with its Amended Petition (Docket No. 4) challenging the NOAA Administrator's final administrative decision upholding the Supplemental Decision, and also seeking injunctive and declaratory relief from the 10-day permit sanction under the 2003 Settlement Agreement.  The GFX also filed its PI (Docket Nos. 5 and 6) regarding the 10-day permit sanction.

12.   Pursuant to a Joint Stipulation regarding briefing on the PI and the Amended Petition (Docket No. 10), at this juncture the Court is only addressing the PI and Counts II and III of the Amended Petition regarding the 10-day permit sanction under the 2003 Settlement Agreement.  Further, the Court has consolidated this matter pursuant to FRCP Rule 65 to consider this matter on the merits for a final decision. The Court  will address Count I of the Amended Petition regarding the  NOAA Administrator's final administrative decision upholding the the Supplemental Decision at a later date in accordance with the statutory procedures of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), 16 U.S.C. § 1855(f).

**II**

**ARGUMENT**

**A.     Preliminary Injunction Criteria**

A preliminary injunction is an extraordinary remedy for which the plaintiff bears the

burden of proving the prerequisites by clear and convincing evidence.  *Granny Goose Foods, Inc.*

*v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974).  In evaluating the appropriateness of

granting a temporary restraining order or  a preliminary injunction a district court weighs four

factors: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable

harm in the absence of an injunction; (3) whether issuing an injunction will burden the

defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any,

on the public interest.  *United States v. Weikert*, 504 F.3d 1, 5 (1st Cir., 2007).  In making this

determination, "the most important element of the preliminary injunction assessment [is whether

or not] the moving party can[] demonstrate that he is likely to succeed [on the merits]."  *Id.*

(internal quotations omitted) (order granting preliminary injunction was reversed because the

plaintiff was unable to show a likelihood of success on his claim of a 4th Amendment violation;

court did not need to evaluate other elements).

Absent a showing of likelihood of success on the merits, the other elements become a

matter of "idle curiosity" and the preliminary injunction should not be granted.  *Id.  See also New*

*Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 & 14 (1st Cir. 2002) (order for

preliminary injunction vacated based solely upon a lack of showing that plaintiff would succeed

on the merits because plaintiff made insufficient showing of the elements of tortuous interference

or lack of good faith required under contract theory; appellate court did not review the other three

6

elements for granting a preliminary injunction).

A court may also deny an order for a preliminary injunction absent a showing of irreparable harm without needing to evaluate the other elements. *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162-163 (1st Cir. 2004). (order granting a preliminary injunction was affirmed where moving party was unable to show that unjust enrichment and a total loss of an investment would constitute irreparable harm). Also "[i]n most cases … irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." *Id.* at 162. The burden for proving irreparable harm lies with the party seeking a preliminary injunction. *Id.* A finding of irreparable harm may exist if there is no adequate remedy at law. *Id.* However, "finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Id. See also In re Rare Coin Galleries, Inc.*, 862 F.2d 896, 902 (1st Cir. 1988) (order granting a preliminary injunction was reversed where moving party's speculation that actions of insurance carrier would lead to inflation or imposition of unreasonable fees was insufficient to show irreparable harm).

If the public interest is involved, a court must determine whether the balance of public interests supports the issuance or denial of an injunction. When the public interest is adversely affected, the court may "withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Yakus v. U.S.*, 321 U.S. 414, 440 (1944). A movant should meet "a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the

7

merits." *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995).

As explained below, the GFX fails to meet its burden on the merits, has not substantialted any real or potential irreparable ham, and there is a demonstrated public interest in protecting fisheries resources that outweighs any hardship to the GFX.  Accordingly, GFXs' PI should be denied.

**B.      GFX Is Not Likely To Succeed On The Merits**

GFX  has no likelihood of success on the merits because the language of Paragraph 3 of the 2003 Settlement Agreement is logical and clear when read in its entirety and the GFX cannot avoid the obligations that were fairly bargained for in that agreement.  *Spalt v. U.S.*, No. 01-11102, 2002 WL 1465769, at *3–4 (unpublished) ("A contract is presumed to be a rational instrument reflecting the mutual interests of the parties.").  The 10-day permit sanction is essentially a contract term that has come due, and it does not raise any issues of due process, irreparable harm, or a need for balancing of the equities.  *Id.; Cozza v. Network Associates, Inc.*, 2005 WL 1377877 (D.Mass., 2005) (unpublished).

Because the crux of this action centers on the terms of the 2003 Settlement Agreement and the parties' respective interpretations of those terms, analysis must begin with a determination of whether the terms of the Settlement Agreement are ambiguous and susceptible to differing interpretations.  In this context the Court may exercise considerable discretion in reaching its own conclusions "guided by the language of the agreement, the circumstances of its formation and its purposes –'in brief, by the usual considerations of contract interpretation.'" *Accusoft Corporation v. Palo*, 237 F.3d 31, 39-40 (1ˢᵗ Cir. 2001) (*citing AMF v. Jewett*, 711 F.2d

1096, 1102 (1st Cir.1983)).  Like a contract, interpretation of a settlement agreement is a

question of law that is within the sole province of the court.  *Accusoft*, 237 F.3d at 40 (*citing*

*Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir.1991) (noting that interpretation of a

settlement agreement between private parties "is akin to a contractual interpretation, and is thus

largely a conclusion of law"));  *cf. Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1083

(1st Cir.1989).  In this action, the Court can only find that the language of Paragraph 3 of the

2003 Settlement Agreement when read in its entirety is unambiguous and that NOAA is entitled

to a logical interpretation of the bargain that it struck with the GFX.  *Accusoft* , 237 F.3d at 41

(*citing Jewett*, 711 F.2d at1102 (1st Cir.1983)).

The GFX's parsing of the operative language in Paragraph 3 is illogical and without

foundation.  The operative language of Paragraph 3 must be read in its entirety, not in parts, and

must be given a logical interpretation within the context of the entire agreement.  *Cozza*, 2005

WL 1377877, at *4–5, n. 5.[4]   A review of the 2003 Settlement Agreement – which clearly sets

forth the circumstances of its formation and its purposes – demonstrates that NOAA's

interpretation of Paragraph 3 of the 2003 Settlement Agreement is justified and that it represents

the parties' intent and understanding at the time the 2003 Settlement Agreement was executed.

*Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1084 (1st Cir.1989) ("Where possible,

words should be given their natural meaning, consistent with the tenor of contractual terms."

---

[4]      *Quoting Donoghue v. IBC USA*, 70 F.3d 206, 212 (1st Cir.1995) ("When a court
looks to the words of a document to consider the meaning of those words in the context of the
agreement, the search is for **manifested** meaning, not a privately held belief or intent of one
party, not communicated to other parties of the bargain.") (emphasis added).

(citations omitted)).[5]

The circumstances that gave rise to the 2003 Settlement Agreement were the GFX's charged violations in the 2002 NOVA and 2002 NOPS.  Exhibits A and B.   The 2003 Settlement Agreement explicitly states that those charges are the subject of the agreement and that the GFX admitted to all but one of the violations.  Exhibit C, ¶ 1.  The purpose of the 2003 Settlement Agreement was to compromise and settle the 2002 NOVA and 2002 NOPS.  Exhibits A and B. Significantly, this  included a greater than 40 per cent compromise of the assessed civil penalty and a 60 percent compromise of the assessed permit sanction by NOAA.  *Compare* Exhibits A and B with C.  The 2003 Settlement Agreement  provided for a clear and defined systematic and enforceable mechanism for the agreed upon compromises made by both NOAA and GFX. Exhibit C. ¶¶ 2–11.  The Court should not now allow GFX to cast a new and selective interpretation upon a critical term of the 2003 Settlement Agreement.  *Accusoft*, 237 F.3d at 41 (it is not the court's "'role to accomplish by judicial fiat what a party neglected to achieve contractually." (*citing Northern Heel Corp. v. Compo Indus.*, Inc., 851 F.2d 456, 466 (1st Cir. 1988) (*quoting RCI Northeast Serv. Div. v. Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir.1987)).

---

[5]       *Id.* ("Black letter law teaches that 'a construction which comports with the Agreement as a whole is to be preferred even if it be thought that certain language, viewed only by itself, more readily suggests something else.'"*citing Spartans Indus., Inc. v. John Pilling Shoe Co.*, 385 F.2d 495, 499 (1st Cir.1967)).  In this action even when "viewed only by itself" the language of Paragraph 3 of the Settlement Agreement does not suggest something else and it is NOAA's interpretation which "comports with the Agreement as a whole."

The gravamen of the GFX's challenge is Paragraph 3 of the 2003 Settlement Agreement, which reads in pertinent part as follows:

> . . .The remaining ten-days of the sanction are suspended for a one-year probation period beginning on the effective date of this Agreement and shall remain suspended contingent on the respondents successfully completing the five-day sanction above and not committing any substantial violation of any federal fishery statute or regulation. ***A substantial fishery violation will be deemed to have occurred as of the effective date of a settlement agreement or the effective date of a final administrative decision (as defined at 15 C.F.R Part 904) in which any of the respondents is liable for a civil penalty of $10,000 or more for any violation having been committed on any date within the probation period. . .***

Exhibit C, ¶ 3 (emphasis added).  The paragraph refers to a one-year probation period and the triggering contingency for reinstatement of the suspended 10-day sanction should another violation be committed within the probation period.  *Id.*  After referring to the contingency, the paragraph defines the determination mechanisms (the effective date of a settlement agreement or final administrative decision) that will trigger the contingency for a violation committed within the probation period.  *Id.*  In the instant case it is the effective date of the final administrative decision (April 1, 2009 – GFX Amended Petition, Exhibit D) in which GFX was found to be liable for a civil penalty "on any date within the probation period."  Exhibit C.

Contrary to the GFX's interpretation, there is no limitation on the date on which a final administrative decision may be determined (or settlement).  The only time limiting language in Paragraph 3, other than limiting the probation period to one year, is that the date of <u>any</u> violation must have been committed "within" the probation period.  *Id.*  The only logical and rational reading of the entire sentence is that the effective date of a settlement or a final administrative decision validates – either through an administrative adjudicatory determination or by agreement of the parties – that a violation occurred on the date that it was committed within the one year

probation period, and that the GFX is liable for a civil penalty of $10,000 or more. *Fashion House, Inc.*, 892 F.2d at 1084.

The GFX's challenge to Paragraph 3 of the 2003 Settlement Agreement is strikingly similar to a settlement agreement that the District Court was called upon to interpret in 2002 in the matter of *Spalt v. U.S.*, No. 01-11102, 2002 WL 1465769 (D.Mass. July 03, 2002) (unpublished).  In *Spalt* a former fisherman, Peter Spalt, had settled with NOAA for significant fisheries violations that resulted in terms of settlement that gave NOAA the unfettered discretion to bar Mr. Spalt from ever again obtaining a federal fisheries permit from NOAA.  *Id.*  After two plus years out of fishing under the settlement agreement, Mr. Spalt brought an action in the District Court alleging due process violations in NOAA's refusal to consent to his application for a permit to resume commercial fishing.  The parties cross-moved for summary judgment and the District Court, Stearns, J., held that (1) denial of permission to apply for fishing permit did not violate the terms of the settlement agreement, and (2) denial of permission to apply for a fishing permit did not violate Mr. Spalt's due process rights.  *Id.*

In reaching his determination and interpreting the challenged language of the settlement agreement, Judge Stearns found that the settlement agreement was essentially the equivalent of a contract, that the language of the settlement agreement was clear as to NOAA's authority, and that  "[a]s a fundamental principle of contract interpretation, a court will not construe a contract in such a way as to divest a party of all the benefit of a reciprocal bargain." *Id.* at *2 (citations omitted).

Of particular application to the 2003 Settlement Agreement, was Judge Stearns' finding that "[t]he Spalts' entitlement argument, if accepted, would render worthless any benefit to

NOAA from the discretionary right that it negotiated." *Id.* at *2, n.7 *(citing to Hiller v. Submarine Signal Co.,* 325 Mass. 546, 550, 91 N.E.2d 667 (1950) ( "parties are bound by the plain terms of their contract.")).   Similarly, to adopt the GFX's interpretation of Paragraph 3 would be completely illogical and would deprive NOAA of the benefit it bargained for, and that GFX agreed to, to be able to reinstate 10 days of a 15-day sanction if it was determined that a violation had been committed within the one year probation period.  Exhibit C, ¶ 3.  Further, interpreting the reinstatement of the 10-day sanction to comport with the date that the violation was committed is consonant with NOAA's conservation and management mandates under the Magnuson Act.  *See discussion below; see also Massachusetts Association For Retarded Citizens, Inc. v. King*, 668 F.2d 602, 607-608 (1st Cir. 1981) ("We recognize that programmatic decrees in public law litigation may call for somewhat more flexible interpretation in light of the need to achieve their basic purposes").

It would make no sense  for NOAA to agree to a provision requiring a final administrative decision to be found within one year.  As recently stated by the District Court, "Massachusetts law disfavors "contract interpretations that make some provision of the contract 'useless or inexplicable.' "  *Spence v. Berkshire Life Ins. Co.*, 561 F.Supp.2d 126, 129 (D. Mass. 2008), *quoting Worcester Mut. Ins. Co. V. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986). Using the GFX's interpretation of the probation period would eviscerate any benefit of the probation period NOAA might have received, making it merely a chimera.  *Demers Bros. Trucking,  Inc. v. Certain Underwriters at Lloyd's, London*, 600 F.Supp.2d 265, 278 (D.Mass. 2009) ("When scrutinizing a contract, a court should interpret broad contract language so as to avoid absurd results."); *Cozza*, 2005 WL 1377877( "Nor does an ambiguity arise 'merely because

an imaginative reader devises a way to split hairs.'" *citing Lexington Ins. Co. v. General Accident Ins. Co. of Am.*, 338 F.3d 42, 47 (1st Cir.2003)).

A provision as posited by GFX would provide a greater incentive to the settling party to hide any misconduct or to delay the results of any misconduct proceedings or the effective date of any settlement. For example, a potential probation violation occurring on the last day of the probation period would be impossible to enforce because it would require discovery, documentation, and prosecution through a final agency determination all within one day. Even a violation occurring on the first day of the probation period would require the same effort and would be unlikely within the one year probation period. This is plainly not what NOAA bargained for, nor does the language of the 2003 Settlement Agreement support such an interpretation.

As in *Spalt*, GFX's due process claims, as well as its constitutional claims, must also fail. *Spalt*, 2002 WL 1465769, at *3. The GFX was accorded substantial due process during the course of the 2002 NOVA and 2002 NOPS process and, after twelve-plus months of proceedings with NOAA, the GFX voluntarily elected to settle the case and to waive all rights of appeal with respect to the charged violations on the terms included in the 2003 Settlement Agreement. Exhibit C, ¶¶ 1, 6, 7, and 8.[6] It is also important to note that the 10-day sanction at issue in this

---

[6]*C.f. Marler v. Missouri State Board of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996) (Settlement agreement under which plaintiff received an optometrist's license subject to probation, then challenged the revocation. Plaintiff had notice of the probationary terms before they were imposed, and he consented to those conditions. If he objected to the probation, he could have rejected the settlement offer and continued to pursue his complaint with the reviewing board as well as his appeal in the Missouri Circuit Court. These avenues afforded the plaintiff adequate procedural protection.)

case is not new or excessive  – it is part of a 15-day sanction that was agreed to by the parties and conditionally suspended.  Further, the detail and specificity in Paragraph 3's definition of a significant fishery violation includes a settlement agreement or a final administrative decision – which demonstrates the parties' understanding and agreement to incorporate due process protections for GFX to be able to challenge any charges that might trigger a reinstatement of the suspended 10-day permit sanction.  Exhibit C, ¶ 3.   In fact, with respect to the reinstatement of the 10-day permit sanction for a violation deemed to have occurred within the probation period, GFX specifically " waive[d] all rights to notice, presentment. or demand by NOAA concerning the permit sanction to be imposed."  *Id.*  Accordingly, the GFX received the very due process it bargained for in the 2003 Settlement Agreement, and its due process claims are without merit.

In summary, GFX has failed to meet its burden for demonstrating a likelihood of success on the merits.  The language of Paragraph 3 of the 2003 Settlement Agreement is clear and unequivocal in its effect on the final administrative decision that established when a substantial fishery violation had been committed during the one year probation period.  *Weikert*, 504 F.3d at 5-6 & 18.  Accordingly, the GFX's PI and Count's II and III of its Amended Petition should be dismissed in their entirety.

## C.   GFX Has Failed To Demonstrate Harm If A Preliminary Injunctive Relief Is Not Granted

The GFX has failed to demonstrate that it will suffer any type of harm that merits injunctive relief.  The GFX alleges that the damages it may incur are incalculable.  Docket No. 6, GFX PI, 9–12; Docket No. 7, Ciulla Aff.  However, as the GFX has stated, they have been in business for over a decade.  *Id.*  From this it is not unreasonable to concluded that there must be years of data from which to calculate and present the range of landing amounts that might be lost.

The GFX also has successfully served a 5-day permit sanction pursuant to the 2003 Settlement Agreement they are now questioning.  This shows that they indeed can survive a sanction and that they can gauge the effect of the reinstated 10-day sanction based on their experience with the first sanction.  However, the GFX has provided no evidence of irreparable harm other than speculation and an argument that they cannot precisely calculate their potential economic loss. Precedent in the First Circuit squarely places the burden of proof for this element with the moving party and the GFX has failed to provide even the most fundamental substantive evidence. *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 7 (1st Cir. 1991); *citing Public Service Co. v. West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987) ( "[I]rreparable harm is not assumed; it must be demonstrated… 'speculative injury does not constitute a showing of irreparable harm.'" ); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15, 19 (1st Cir. 1996) (". . .the plaintiff's showing must possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm."); *Charlesbank Equity Fund II, Ltd. P'ship,* 370 F.3d 151, 162-163 (1st Cir. 2004) ("[F]inding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.").

GFX's factual allegations are also questionable.  For example, the GFX claims that it purchases 17 to 22 million pounds of fish annually and that June and July are two of its busiest months of the year, comprising approximately 3 million pounds of fish.  Docket 4, GFX Amended Petition, ¶ 29.  The GFX also claims that the June and July purchases are almost double the amount purchased in April and May.  Docket No. 6, GFX PI, 9–12; Docket No. 7, Ciulla Aff.   These factual claims do not withstand scrutiny.  By the GFX's numbers, the June

16

and July landings amount to only an average annualized amount.  Using the range of annual

purchase amounts by the GFX of 17 to 22 million pounds, an average bi-monthly total would be

equal to approximately 2.8 to 3.7 million pounds (17 or 22 million divided by 6).  Thus, the

approximately 3 million pounds claimed to be purchased by the GFX's own representations  is an

average amount at best, not two of the busiest months as claimed.  This is even more apparent if

one considers the GFX's statement that June and July are roughly double the amounts landed in

April and May.  Based on GFX's claims, the roughly 3 million and 1.5 million purchased for the

GFX during that 1/3 of the year is equal to less than 1/3 of its business, specifically only about

1/4 to 1/5 of the GFX's total purchases.  Using simple math and using GFX's own

representations, the unavoidable conclusion is that there is at least one other substantially busier

month.

 Further, GFX's representations about its unique standing and role in the fishing industry

contradict its assertion of irreparable and catastrophic harm.  The GFX claims to be the second

largest seafood auction on the East Coast of the United States, and that it handles more fish than

any other United States seafood auction on the East Coast from New Bedford to the Canadian

border.  Docket No. 6, GFX PI, 9–12; Docket No. 7, Ciulla Aff.  If circumstances are as GFX

claims, then it logically follows that, while GFX and dealers would no doubt be temporarily

inconvenienced by a 10-day closure, business and revenues would rebound very quickly by the

simple fact that GFX is one of only two entities that offers auction services in an enormous

geographic region.  Essentially, by its own representations, the GFX is the only game in town.

To be sure, a 10-day permit sanction will have an economic impact on the GFX – it is why

permit sanctions are used for enforcement purposes – but it will not be irreparable or

catastrophic as the GFX claims.  The 10-day sanction was negotiated for by the GFX, and it should not be heard to complain of it now.

In sum, the extraordinary remedy of a preliminary injunction requires a showing of substantive and demonstrable harm which is entirely absent from the GFX's submissions, and is contradicted by GFX's own representations.  Accordingly, injunctive relief should be denied.

*See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974);

*Narragansett Indian Tribe, supra; Ross-Simons of Warwick, Inc., supra; .Charlesbank Equity Fund II, Ltd. P'ship, supra.*

**D.     The Balance Of Equities And The Public's Interests In Protecting Fisheries Resources Dictate Against The Granting Of A Preliminary Injunction**

In comparison to the minimal and temporary impact on the GFX, NOAA has a strong interest in achieving compliance with its settlement agreement provisions.  NOAA's enforcement efforts will be markedly affected if the GFX is allowed to evade the terms of the 2003 Settlement Agreement.  Nationwide NOAA adjudicates hundreds of administrative civil cases under the Magnuson Act, Endangered Species Act, Marine Mammal Protection Act, and other environmental statutes.  The majority of these cases are resolved by settlement agreement.  Many of these cases involve probation periods similar to the provision in the 2003 Settlement Agreement.  If the effectiveness of negotiated settlement agreement provisions are later abrogated based on a post-hoc analysis of a bargained for agreement and the equities of a specific case, then NOAA's enforcement program will be seriously hampered.

Probation is a long-honored and useful enforcement mechanism.[7]  It provides a violator

---

[7]     Compromising civil penalties with conditions or imposing permit conditions are authorized actions under the Magnuson Act. The Act authorizes the Secretary of Commerce,

with the opportunity of a fresh start and to show they can comply with important societal or

business requirements.  NOAA has a strong interest in the use of probationary terms within its

settlement agreements, and having them enforced if the terms of probation are not satisfied.

The probation terms of the 2003 Settlement Agreement are being enforced here pursuant

to a valid settlement agreement and after reasonable notice (not required under the express terms

of the settlement agreement) was provided to the GFX.  The GFX asked for and received a fair

settlement agreement.  The GFX does not now agree with the outcome, but it has received the

full benefit of its bargain and the process it agreed to before the 10-day sanction would be

implemented.  The GFX should not be allowed to now escape its obligations through a post-hoc

and strained interpretation of the terms of the 2003 Settlement Agreement.  *See n. 5, supra.*

NOAA has a strong interest in seeing the provision complied with sooner rather than

later.  On the effective date of a final administrative decision, the GFX's dealer permit was

sanctioned until the 10-days were served.  The GFX, as well as its counsel, has had a copy of the

---

through NOAA, to "compromise, modify, or remit, with or without conditions, any civil
penalty...." that is assessed under the Act. 16 U.S.C. § 1858(e).  Further, the Act authorizes the
Secretary to impose conditions and restrictions on any permit issued under the Act.  Section
1858(g) (16 U.S.C. § 1858(g)) concerning permit sanctions states that the Secretary may revoke
permits, suspend permits, deny permits, and "impose additional conditions and restriction on any
permit issued under this Act."  The 10-day sanction that was suspended for a one-year period was
a condition both of compromising the civil penalty assessed in the matter, but also was a
condition of the GFX's permit as allowed by the Magnuson Act. The NOAA has used such
conditions when enforcing the Magnuson Act and other fisheries laws since at least as far back as
1983. *See e.g., In re James Britton*, 3 O.R.W. 264, 272-273, 1983 WL 42015, p.5-6 (N.O.A.A.)(3
years of a 5 year tuna permit revocation suspended contingent on fulfillment of permit
conditions); *see also In re Rubin & Lisa, Inc.*, 5 O.R.W. 508, 1989 WL 265315 (N.O.A.A.)
(upholding the imposition of $7,000 of a $10,250 civil penalty that was suspended for two years
contingent on the respondent committing no further violations, during which time the respondent
committed a new violation that became a final administrative decision).

agreement since late 2003.  Exhibit D, 2003 Settlement Agreement Notifications.  The GFX could have chosen to serve the 10-days beginning on April 1, 2009, when it is contended that the business was not as busy as it is now.  The GFX chose not to serve the sanction then and has purchased, possessed, and received regulated species of fish with a sanctioned permit since then.  Consequently, the GFX has been operating in violation of NOAA regulations at 50 C.F.R. § 648.14(c)(1).

In summary, the GFX has failed to demonstrate that it will suffer any serious harm from the imposition of the 10-day sanction.  Conversely, enforcement of the sanction on the GFX serves a critical function in NOAA's mission and responsibility to protect, conserve and manage fishery resources. To interpret the 2003 Settlement Agreement as the GFX suggests would only serve to thwart the important environmental conservation goals that NOAA is trying to achieve.

## III
## <u>CONCLUSION</u>

Based on the foregoing, GFX's, Application for PI should be denied , and Counts II and

III of GFX's Amended Petition should be dismissed for failure to state a claim upon which relief

may be granted.

<div style="margin-left: 50%;">

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL K. LOUCKS
Acting United States Attorney

</div>

OF COUNSEL:                      By:     /s/ Anton P. Giedt   7/10/2009
Mitch MacDonald                          Anton P. Giedt
NOAA Enforcement Attorney                Assistant U.S. Attorney
55 Great Republic Dr.                    1 Courthouse Way
Gloucester, MA  01930                    Boston, MA 02210
978.281.9379 (Voice)                     617-748-3309 (Voice)
978.281.9389 (Fax)                       617-748-3967 (Fax)
mitch.macdonald@noaa.gov                 anton.giedt@usdoj.gov

---

<div style="border: 1px dotted;">

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                   Boston, Massachusetts
                                               DATE:July 10, 2009

   I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Plaintiff's counsel of record through electronic filing.

                                   /s/ Anton P. Giedt
                                   Anton P. Giedt
                                   Assistant U.S. Attorney

</div>