UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOUCESTER FISH EXCHANGE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GARY LOCKE, SECRETARY OF COMMERCE, UNITED STATES DEPARTMENT OF COMMERCE / NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION AND UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No.: 09-cv-10694-DPW |

## AFFIDAVIT OF ANDREW R. COHEN

1. I am the Special Agent in Charge (SAC) of NOAA Fisheries Office of Law Enforcement's Northeast Enforcement Division. In that capacity, I supervise fisheries enforcement operations in nineteen states, including the ten coastal states from the Canadian border through Virginia. I am submitting this affidavit in response to a request by the Court in the above captioned matter.

2. I have been the Special Agent in Charge since March, 2004. I have been employed by NOAA as a criminal investigator since November, 1987.

3. On Thursday, June 18, 2009, I called Boston Globe reporter Beth Daley, as follow-up to a March, 2009 series of phone calls and email regarding the criminal prosecutions of endangered species/ marine mammal cases. At that time Ms. Daley had asked me to call her and update her on two pending cases. I have known Ms. Daley for approximately eight years and we speak occasionally.

4. During the call, Ms. Daley asked me what was going on in Gloucester. I was surprised

and did not respond initially, because I was uncertain as to what she was inquiring about. Ms. Daley then asked me again what was going on in Gloucester. I told her that something was going to happen on the following day and that if she called me on the following day, I could give her information that she might want to cover. I did not mention the Gloucester Fish Exchange (GFX). Ms. Daley said she would not be at work the following day due to a prior commitment, but would have reporter Brian MacQuarrie call me. I commented that recently there had been some reporting in the Gloucester Daily Times (GDT) that had omitted relevant factual information and presented an inaccurate factual explanation of NOAA enforcement actions. I did not elaborate further, or mention the GFX and told her that I could not speak about it until the following afternoon. I told Ms. Daley that I would be out of the state the following day but could be contacted on my cell phone.

5. Ms. Daley asked if she should send a reporter and photographer to Gloucester. I replied that it probably was unnecessary; a press release would be issued, outlining the facts.

6. At approximately 5:00 PM on Thursday, June 18, 2009, Boston Globe reporter Brian MacQuarrie left a message on my office phone asking me to return his call. I did not get the message immediately and did not return the call on June 18, 2009.

7. At approximatley 9:30 AM on Friday, June 19, 2009, Brian MacQuarrie called my cell phone as I was driving to New York for the weekend. I told him that the case involved a violation in 2000 and was going to result in a permit sanction of the GFX that had previously been agreed upon by NOAA and the GFX. I specifically told Mr. MacQuarrie not to discuss what I told him until I called him later in the afternoon. He indicated that

he would honor that request.

8. I told Mr. MacQuarrie that the GFX was not yet aware of the action, but would receive a letter from the Office of General Counsel that day. There was no mention of a photographer going to the GFX, or a request that I meet anyone from the Boston Globe. I told Mr. MacQuarrie that I was driving to New York for the weekend. Mr. MacQuarrie said that he "might take a ride to Gloucester." This made me uncomfortable and I told him for a second time, not to interview anyone until I called him. He indicated that he understood.

9. I also told Mr. MacQuarie, in substance, that it would be refreshing to see accurate factual reporting of NOAA enforcement activities, as much of the press coverage in the GDT had not been factually accurate.

10. At approximately 9:50 AM, Friday, June 19, 2009, I sent Mr. MacQuarrie an email with Q&As and a press release attached (Exhibit A), so that he would have accurate information about the agency action being taken. I sent the email from my car on my government laptop computer, which has mobile internet service. The text portion of the e-mail said: "Brian, here is an early heads-up. Please don't distribute this until I call you, at about 1:30 PM. I will be sending you several other documents today, as they are finalized. Legal questions and case-specific questions can be directed to attorney Mitch MacDonald, NOAA Office of General Counsel for Enforcement and Litigation. His cell phone number is 508-523-6211. I can answer enforcement and operational questions and speak to why the regulations are important." The "other documents" I referred to pertained to the press release, which was not finalized. My use of the plural,

"documents" was in error as I was only referring to the press release.

11. The Q&As attached to the email addressed the following points: What is occurring?; What is a dealer permit sanction?; Why the action is being taken now; What was the violation?; Is NOAA unfairly targeting GFX?; Will NOAA work with GFX to prevent future violations?; Is NOAA "heavy handed" or unfair? The document also stated, "…fishermen who use the facility to sell their catch will receive advance notification so…fishermen can make alternate arrangements for selling additional catches." This information was included in MacQuarrie's article on the Web edition of the Boston Globe, *Boston.com*, posted later in the day on Friday, June 19, 2009.

12. At approximately 1:06 PM, Friday, June 19, 2009, Mitch MacDonald of the NOAA Office of General Counsel called and told me that the GFX letter had been delivered by fax. During that phone call, I told him to expect to be contacted by Mr. MacQuarrie.

13. At approximately 1:15 PM, Friday, June 19, 2009, I left telephone messages, with return contact information, at the offices of Gloucester Mayor Caroline Kirk and state Senator Bruce Tarr, informing them of the action. The purpose for making these contacts was to disseminate accurate factual information about the agency's action because it was anticipated that there would be inquiries and interest in this action.

14. At approximately 1:45PM, June 19, 2009, I emailed the press release to reporter Richard Gaines and editor Ray Lamont at the GDT and to the Eagle Tribune, which I believe is the GDT's parent publication. (Exhibit A). As with the messages for the government officials, I did so to provide the Times with accurate information about the agency's action. I also emailed the press release to two reporters at Commercial Fisheries News at

the same time.

15. At approximately 2:30 PM, Friday, June 19, 2009, I spoke to Mr. MacQuarie again on the phone. I do not recall who initiated the phone call. He asked me several questions. I specifically recall being asked about the GFX and why enforcement of fisheries laws are important, which I explained. Mr. MacQuarrie also asked me for a description of the violation, which I provided and I suggested that he also contact attorney Mitch MacDonald. On Saturday, June 20, 2009, Mr. MacQuarrie's article, "Seafood Auction Gets Ban of 10 Days" was printed in the Boston Globe which included a recounting of our phone conversation. Exhibit B.

16. None of my comments to Mr. MacQuarrie appeared in the online edition of the Boston Globe on June 19, 2009, as stated in Mr. Cuilla's declaration. Docket No. 7, ¶ 21 and Exhibit E.

17. Later in the day, June 19, 2009, GDT editor Ray Lamont left a message at my office, indicating that the timing of the letter to the GFX was problematic for him because it was reporter Richard Gaines' day off, and requested that I return his call. Coverage of the letter to the GFX appeared in the online GDT; however I do not know if it was posted before or after Mr. Lamont's call to me. I retrieved Mr. Lamont's message on Monday, June 22, 2009, and the call was subsequently returned by Lesli Bales-Sherrod at NOAA OLE headquarters.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and recollection.

_____
Andrew R. Cohen

DATED: 7/25/09