UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOUCESTER FISH EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> GARY LOCKE, SECRETARY OF COMMERCE, UNITED STATES DEPARTMENT OF COMMERCE / NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION AND UNITED STATES OF AMERICA, <br><br> Defendants. | Civil Action No.: 09-cv-10694-DPW |

## AFFIDAVIT OF MITCH MaCDONALD

1. I am an attorney for the National Oceanic and Atmospheric Administration's (NOAA) Office of General Counsel, Northeast Region (GCNE). I have worked as an enforcement attorney for NOAA for approximately 14 years. In that capacity I am responsible for processing civil administrative cases involving federal fisheries violations. I am providing this affidavit in response to a request from the Court in the above captioned matter.

2. At approximately 12:56 p.m. to 12:58 p.m., on Friday, June 19, 2009, my secretary faxed a notice (Docket No. 4, Exhibit E, GFX Amended Petition) to the Gloucester Fish Exchange's (GFX) fax number that the GFX had provided to NOAA on their dealer permit application. The notice informed the GFX about the reinstatement of a suspended 10-day sanction for prior violations of fishery regulations (Docket No. 4, Exhibit E and F, GFX Amended Petition). Confirmation was received from GCNE's fax machine that this fax was properly sent and received by the GFX. Docket No. 4, ¶ 95 and Exhibit E, GFX

Amended Petition). I received a call from my secretary at 1:05 p.m. notifying me that the fax was sent and received. I then called Kelly Denit at the NOAA Program Coordination Office, at 1:05 p.m. to notify her that the fax was sent and that federal legislators who were interested in activity involving the GFX could now be informed.

3. At 1:06 p.m., on Friday June 19, 2009, I called NOAA Special Agent in Charge Andrew Cohen and informed him that the notice had been sent.

4. Sometime between approximately 1:15 p.m. and 1:45 p.m., on June 19, 2009, my secretary called the GFX and was told by someone at the GFX that the GFX did not receive the notice.

5. At 1:52 p.m., my secretary faxed the notice again. GCNE received another message confirmation that the notice was properly sent and received. Shortly after receiving this confirmation, my secretary called the GFX and was again told they did not receive either the first fax or this second fax. At approximately 2:20 p.m., one of our support staff members hand-delivered the notice to the GFX.

6. My only contact with any media concerning this matter was a phone call I had with Christine Blank on Monday June 22, 2009, from SeafoodSource.com after she was referred to me by Lesli Bales-Sherrod, of NOAA Public Communications and External Affairs. To the best of my recollection, my discussion with Ms. Blank included the following: (1) Ms. Blank asked me about the civil administrative system in general, and the status of the GFX matter in particular; (2) I carefully outlined for her the procedural status of the GFX matter in relation to the two other cases involving the GFX. Ms. Blank had numerous questions about the procedural aspects of these matters, and I wanted to be

sure she understood the order of and nature of each matter. Concerning the probation violation and the suspended 10-day sanction, I explained to Ms. Blank the 2003 GFX's settlement agreement with NOAA and that NOAA's position is that the final administrative decision entered on April 1, 2009, triggered a provision in the 2003 settlement agreement that required the GFX to serve a suspended 10-day permit sanction. I explained that the GFX had until June 24 to provide us with a legal reason why they should not shut down, or to provide GCNE with a date on which the GFX would begin to serve the sanction by July 13, 2009. I discussed with Ms. Blank that NOAA's interest in this matter was to see that the GFX honored its agreement with NOAA. I stated that NOAA has no retaliatory motive against the GFX or any other fisherman. I said that NOAA enforcement attempts to target violators, that NOAA's interest is in, and GCNE's operations are focused on, enforcing the law even-handedly and that NOAA wants fishermen to succeed. I discussed with Ms. Blank that the probation provision was intended to encourage compliance with the law. I further explained that the suspension of the sanction during that one year probation period was to give the GFX the benefit of its claims to NOAA during settlement negotiations that it was law abiding and worked hard to follow the fisheries laws.

7. Prior to issuance of the notice on June 19, 2009, I requested that a press release be prepared in this matter for release after GFX had been notified. The purpose of the press release was to fully and accurately inform the public about the background and how NOAA was handling the matter involving the GFX. Recently, matters involving NOAA fisheries management and enforcement have attracted much attention in the region and

have been covered extensively by the Gloucester Daily Times (GDT). In some instances, important factual information has not been included resulting in inaccurate characterizations of NOAA fisheries enforcement actions. As one example, provided by the plaintiff in this matter, the GDT expressly referred to the probation violation occurring in 2004 as NOAA's first case involving the GFX, without any reference to the violations occurring in 2000 and the resulting 2003 settlement agreement that is the subject of this action (Declaration of Lawrence Cuilla, Ex. F, p. 4, update of the probation violation titled the "First Case Status"). The press release on this matter was designed to ensure that all relevant factual information was made available to the public.

8. I have inquired within GCNE, and had others inquire within the NOAA Office of Law Enforcement for the Northeast Region and in Silver Spring, Maryland, and the NOAA Office of Communications and External Affairs in Washington, DC, about whether any NOAA personnel had contact with any media concerning the GFX press release or the GFX, immediately prior to or immediately after the GFX was informed of the 10-day sanction on June 19, 2009. Based on those inquiries, and to the best of my knowledge, only Mr. Andy Cohen, Ms. Lesli-Bales-Sherrod, and myself, had any direct contact with any media concerning the GFX press release or the GFX, immediately prior to or after the GFX was informed of the 10-day sanction on June 19, 2009. Mr. Cohen and Ms. Bales-Sherrod, have also submitted affidavits in this action. Mr. Jerry Slaff, from the Office of Communications and External Affairs, has also submitted an affidavit in this action relating to his distribution of the press release.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and recollection.

Mitch MacDonald

DATED: 7/16/09