```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS



GLOUCESTER FISH EXCHANGE, INC.,    )
                    Plaintiff,     )
                                   )  Civil Action
                                   )  No. 1:09-cv-10694-DPW
vs.                                )  July 20, 2009
                                   )  Motion Hearing
                                   )  @3:05 p.m.
GARY LOCKE, ET AL,                 )
                    Defendants.    )
```

```
        BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
                 UNITED STATES DISTRICT JUDGE
```

```
        John Joseph Moakley United States Courthouse
           1 Courthouse Way, Courtroom No. 1
                    Boston, MA  02210
```

```
            Helana E. Kline, RMR, CRR
               Official Court Reporter
        John Joseph Moakley United States Courthouse
             1 Courthouse Way, Room 3507
                    Boston, MA  02210
```

```
APPEARANCES:


For the Plaintiff:


Burns & Levinson, LLP
(By:  Jeffrey R. Martin, Attorney at Law &
      Paul T. Muniz, Attorney at Law)
125 Summer Street
Boston, Massachusetts 02110
(617) 345-3494



For the Defendants:


United States Attorney's Office
(By:  Anton P. Giedt, Attorney at Law)
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02210
617-748-3309
```

```
1              P R O C E E D I N G S

2              THE CLERK:  All rise ... this Honorable Court is

3     now in session.  You may be seated.  On the case Civil

4     Action 09-10694, Gloucester Fish Exchange, Inc., versus

5     Gary Locke, et al.

6              THE COURT:  Well, I do have a motion from the

7     Attorney General, which is to be an amicus curiae.  Is

8     someone here from the Attorney General's office?

9              MR. HAMMOND:  Yes, your Honor.

10             THE COURT:  Please come forward because I have some

11    questions.

12             MR. HAMMOND:  Very well.

13             THE COURT:  And perhaps you could introduce yourself

14    so it's reflected in the record?

15             MR. HAMMOND:  Certainly, your Honor.  Daniel Hammond,

16    Assistant Attorney General; and with me is Christine Baily,

17    Assistant Attorney General.

18             THE COURT:  Now, I guess I'm a bit perplexed by the

19    motion to participate; I take it that you're not tendering

20    any facts that haven't been already deduced by the plaintiff?

21             MR. HAMMOND:  No, your Honor.  We're seeking to

22    participate only in the sense of giving the Court a broader

23    picture of the harm, not to the plaintiff, but to the

24    surrounding community and to the economy of Massachusetts.

25             THE COURT:  Well, that I guess is itself a little
```

```
 1    perplexing.  As I understand it, you take no position on the

 2    merits of the underlying violation?

 3            MR. HAMMOND:  That's correct.

 4            THE COURT:  And so what you're saying is that the

 5    sanction that is imposed would be a burdensome sanction?

 6            MR. HAMMOND:  That's correct, your Honor.

 7            THE COURT:  What if the merits prove to support the

 8    government here, the federal government?

 9            MR. HAMMOND:  Well, as we say in the amicus, your

10    Honor, certainly, that would trump the equitable

11    considerations.  We're speaking only to the balance of the

12    harm prong of the injunction.

13            THE COURT:  Right.  And, of course, the question of

14    the plaintiff obtaining success on the merits is the critical

15    factor in the preliminary injunction, but you have nothing to

16    say on that?

17            MR. HAMMOND:  That's largely correct, your Honor.

18            THE COURT:  Now, in the administrative proceedings

19    in the Commonwealth, is it common to have stays?

20            MR. HAMMOND:  It's not automatic to have stays; under

21    the state APA, the party being sanctioned has to request one.

22            THE COURT:  Okay, and does the Attorney General's

23    Office take an active role on questions of stays in these

24    various matters?

25            MR. HAMMOND:  Well, to the extent we become trial
```

1    counsel, then, obviously, we --

2         THE COURT:  Well, no, I'm just interested in, I'll

3    call it, the degree of friendliness.

4         MR. HAMMOND:  Well, it's a difficult analogy, your

5    Honor, because, certainly, the Attorney General is generally

6    counsel of record for the agency against whom the stay is

7    sought.

8         THE COURT:  All right.

9         MR. HAMMOND:  So we would be --

10        THE COURT:  And so the Attorney General makes their

11   own decision about whether or not to acquiesce to the stay or

12   impose the stay?

13        MR. HAMMOND:  In consultation with the client, yes.

14        THE COURT:  Now, this question of being engaged on

15   it as an amicus curiae, how frequently do you do this?

16        MR. HAMMOND:  On the trial level relatively

17   infrequently, your Honor.

18        THE COURT:  How much, say, in the last five years?

19        MR. HAMMOND:  I'm aware of one or two prior cases.

20        THE COURT:  What were those cases where the Attorney

21   General took amicus curiae?

22        MR. HAMMOND:  Well, the only one that I'm aware of

23   was a telecommunications case, and I don't really recall the

24   mechanics of it.  I recall that there was an amicus

25   participation.

```
1          THE COURT:  Well, you understand the prospect of
2    the likelihood of officials obtaining favor, I suppose, of
3    their constituents, and there have been filed here affidavits
4    purporting to show the interests of legislative figures
5    here in this case, and I'm sure you understand that it's a
6    matter of profound indifference what elected officials have
7    to say; this is a legal case.
8          MR. HAMMOND:  Absolutely, your Honor.
9          THE COURT:  And the question that arises is whether
10   or not legal positions are valid or not valid; and as I
11   understand it, what you have to say is:  all other things
12   being equal, if there's a question about the likelihood of
13   success on the merits, other factors weigh in favor of not
14   disrupting the fishing industry in Massachusetts?
15         MR. HAMMOND:  Yes, that's it in a nutshell.
16   Although, we do also speak to essentially the precipitousness
17   of serving the sanction before the underlying violation is
18   reviewed.
19         THE COURT:  Well, we started by asking about stays,
20   and my understanding is that the party who opposes an
21   underlying sanction, even in the Commonwealth where you are
22   in fact counsel --
23         MR. HAMMOND:  Yes.
24         THE COURT:  -- has to move to stop the execution of
25   a sanction?
```

1          MR. HAMMOND:  Yes, that's correct.

2          THE COURT:  So as a matter of law it's not an issue;

3     in that it is improper to impose a sanction before there's

4     judicial review of it, either in the Commonwealth or in the

5     federal courts.

6          MR. HAMMOND:  No, it's not improper as a matter of

7     law.

8          THE COURT:  Okay, and so then I get to this question

9     of what animates the amicus curiae on this issue, which is

10    highly fact-intensive; and as to which, I gather, you have no

11    additional facts other than what is reflected in the

12    plaintiff's brief to offer?

13         MR. HAMMOND:  I'm sorry, I'm missing something.

14         THE COURT:  Well, is there anything here that should

15    be brought to the attention of the Court that isn't brought

16    to the attention of the Court by the party?

17         MR. HAMMOND:  Not factually, your Honor.

18         THE COURT:  Or as a matter of law, any legal

19    arguments that haven't been brought to my attention here?

20    In short, is there something new that the Attorney General

21    brings to this case other than the presence of the Attorney

22    General?

23         MR. HAMMOND:  Perhaps not, your Honor, other than to

24    give a broader perspective.

25         THE COURT:  What's the broader perspective that is

1   unavailable to the plaintiff?

2         MR. HAMMOND:  The effect on the economy at large as

3   opposed to the effects upon the plaintiff.

4         THE COURT:  And are you relying here on affidavits of

5   the Attorney General on that issue?

6         MR. HAMMOND:  No.

7         THE COURT:  No.  What I have is a narrative

8   unballasted by any citation to any record evidence?

9         MR. HAMMOND:  Yes, that's correct, your Honor.

10        THE COURT:  Well, I guess it strikes me where you

11  cite Strasser V Doorley, where Judge Aldrich tells the story

12  of a fellow who was facing amicus curiae on the other side,

13  was asked by the judge:  what did he have say to say about

14  what the amicus curiae had to say?

15     He said, your Honor, that man is no more a friend to the

16  Court than I am ... and so the question is whether or not

17  the Attorney General appears here on an amicus curiae or

18  perhaps an amicus parti pris, friend of the party.

19        MR. HAMMOND:  I understand, your Honor.

20        THE COURT:  So I'll take it under advisement the

21  question of whether or not to receive the amicus curiae

22  submission of the Commonwealth.

23        MR. HAMMOND:  Thank you, your Honor.

24        THE COURT:  Anything else?

25        MR. HAMMOND:  No, your Honor.

1    THE COURT:  Okay.  So let's deal with the parties

2  themselves.

3    I guess I need to know from the -- I'll refer to the

4  government as the defendant; why aren't you enforcing the

5  main section here, the 2009 sanction?

6    MR. GIEDT:  The one that was entered on April 1st,

7  2009, your Honor ... the reason being that under the

8  regulations that party has the opportunity to appeal it to

9  this Court, to the district court, your Honor, under the

10  statute.

11    THE COURT:  Is that automatically stayed?  Is that

12  automatically stayed?

13    MR. GIEDT:  I don't believe that it automatically

14  stays, but the government or NOAA typically stays it pending

15  review in the district court and has elected to do so in

16  this case.

17    THE COURT:  Why has it elected to do so?

18    MR. GIEDT:  Because it elects to do so as a matter

19  of policy on all cases where it allows, where a final agency

20  determination that has been issued as part of an enforcement

21  proceeding is -- goes forward for appeal in the district

22  court.

23    THE COURT:  Okay.  Now, isn't the matter that's

24  before me contingent upon the success of that final review?

25    MR. GIEDT:  No, it's not, your Honor.

1           THE COURT:  Well, let me --

2           MR. GIEDT:  Okay.

3           THE COURT:  -- frame it a little bit more

4    effectively:  if ultimately I find that there is no violation

5    of the April 1 --

6           MR. GIEDT:  Yes.

7           THE COURT:  -- final administrative action, is there

8    a basis for the probationary sentence to be imposed?

9           MR. GIEDT:  Yes, there is, because there is -- in

10   the settlement agreement the parties agree to the terms

11   which are in Paragraph 3.

12          THE COURT:  Well, I understand what they say, but I

13   guess we'll get to what it says, but what you're effectively

14   saying is if -- even if this final administrative action

15   turns out to be erroneous?

16          MR. GIEDT:  Arbitrary and capricious?

17          THE COURT:  Arbitrary and capricious, to use terms

18   of art, then, as a consequence, it doesn't make any

19   difference that it is the basis upon which the probation

20   violations occur?

21          MR. GIEDT:  That's true, because the parties agree

22   for it to be a final administrative decision as that term is

23   defined in the NOAA regulations.

24          THE COURT:  So a final administrative decision, it

25   includes the final erroneous administrative decision by NOAA?

1        MR. GIEDT:  The contract terms, it appears from the

2    contract terms, that's what the parties bargained for here.

3        I'm not saying that that decision was made on one party's

4    part; that was what was bargained for.

5        THE COURT:  And so you're asking the Court to impose

6    essentially what's called dead time, where we get into the

7    law of probation?

8        You know, I face probation violations and supervised

9    release probations --

10        MR. GIEDT:  I understand that.

11        THE COURT:  -- with some frequency; and when they're

12    brought on, the general tendency is to defer ruling on them

13    until the underlying violation is determined ... so

14    frequently, you know, the fellow will come in who's on

15    supervised release and has been charged with another crime,

16    but it's not final ... we defer that until there's a final

17    determination rather than having two separate courts acting

18    on that, but your view is it really doesn't make any

19    difference, even if the purported violation is erroneous or,

20    I'll call it, let's say, arbitrary and capricious?

21        MR. GIEDT:  Well, two reactions to that.  First,

22    your Honor, the context in which you're talking about is a

23    criminal context and different than a civil context.

24        THE COURT:  Well, no; that's the thing about

25    analogies, they involve different circumstances --

```
1          MR. GIEDT:  I understand.

2          THE COURT:  -- used to illuminate the common thread,

3     and the common thread here is that what the government is

4     asking me to do is to permit it to go forward with an

5     administrative sanction which is premised on a matter that

6     is still, the merits, the merits anyway, are still up in the

7     air; and as to which, the merits even the government as a

8     matter of policy isn't prepared to move forward on?

9          MR. GIEDT:  The government is asking the Court to

10    rule on -- well, we're not asking the Court to do it.  This

11    is the party that has come to it.

12       The government believes that it has a contract term

13    that's enforceable on the language that's in the contract

14    terms, and that it's a term to which the parties agree.

15         THE COURT:  So I should treat final administrative

16    action as the last thing the administrative agency did even

17    if it was wrong?

18         MR. GIEDT:  You should treat the final administrative

19    action as the term to which the parties agree.

20       There could be many reasons why the parties at the time

21    the settlement agreement was entered into, and NOAA does

22    this quite often.

23       Often both parties are interested in not waiting until a

24    proceeding goes all the way through the district court, and

25    they make -- they strike that bargain; they take that risk,
```

1    just like you do in any provision in a contract, and that

2    risk is taken.

3        And the risk being that:  Hey, by the time we get to a

4    final administrative decision, that's what we're settling

5    for, and that's what was settled for in this action.

6            THE COURT:  Because it uses the term final

7    administrative decision?

8            MR. GIEDT:  It was a defined term with a cite to the

9    regulations which defined that term.

10           THE COURT:  And so if a judgment of the Court vacates

11   it, it's still a final administrative action?

12           MR. GIEDT:  It's a final administrative action which

13   the Court -- which the agency reached at that time; it could

14   be up on appeal, it could be vacated, it could be remanded.

15           THE COURT:  If it's vacated, what is its status as a

16   final administrative action?

17           MR. GIEDT:  It's vacated; it's nullified.

18           THE COURT:  So it's a final administrative action

19   that's no longer a final administrative action, isn't it?

20           MR. GIEDT:  It is.

21           THE COURT:  So now we go back to the earlier point,

22   which is:  why would I do that?

23       Why would I, under these circumstances, when the

24   critical contingent factor, that is, the bona fides or the

25   validity of the one matter is up in the air; and if it's

```
1    adversely determined against the government will result in
2    no longer a final administrative action, why then would it
3    be appropriate to enforce the sanction?
4        Why isn't that as much as the underlying sanction itself
5    a matter to take up after a determination of the merits?
6            MR. GIEDT:  I'm not arguing with the Court's logic
7    in that respect.  I come back to the fact that this is a
8    contract term.
9        The contract term defines what final agency action is.
10   It's when the administrator has issued the determination
11   that the administrator issued on April 1.
12           THE COURT:  But it's always provisional until there's
13   been a final resolution by the courts.
14           MR. GIEDT:  No, it's as of the effective date as
15   determined in Paragraph 3; the effective date of the agency's
16   final administrative action.
17           THE COURT:  So are you backing away from the idea
18   that it's nullity if it's overturned?
19           MR. GIEDT:  No, I'm not backing away from the fact
20   that there may be a nullity or it may be modified in some
21   respect; I'm sticking to the language of what's in the
22   contract, your Honor.
23           THE COURT:  But I understand what you're saying
24   with respect to the language of the contract, understanding
25   that I acknowledge what you're saying, but the question is
```

```
1    whether it makes any sense; and we've got a final

2    administrative action that could turn out to be a nullity,

3    as to which the government would be unprepared to move

4    forward without a final determination by the Court

5    apparently as a matter of policy of the government?

6           MR. GIEDT:  I'm not disputing any of that.  All I'm

7    saying is that I just keep coming back to the language ...

8    that's the bargain that both parties, that both parties

9    agreed to, and it's clear; it's very clear in the settlement

10   agreement.

11          THE COURT:  Well, I mean, we'll just look ... you

12   say barring judicial review, is that what it says?

13          MR. GIEDT:  No, it doesn't say barring judicial

14   review.

15          THE COURT:  Where do I find it?

16          MR. GIEDT:  There's a footnote under Section 904

17   where the term is -- it's Footnote 3, your Honor.

18          THE COURT:  Let me just pull it up ... Footnote 3 to

19   what?

20          MR. GIEDT:  To our brief, our opposition.

21          THE COURT:  So your position I guess then is that it

22   stays final administrative action even if it's rendered a

23   nullity by the judicial review?

24          MR. GIEDT:  I'm sorry, I didn't understand your

25   question, your Honor.
```

1          THE COURT:  Your position is it remains a final

2     administrative action even if rendered a nullity by judicial

3     review?

4          MR. GIEDT:  No.  All I'm saying is that the

5     definition of it there, the definition of a final

6     administrative decision is defined as an order or decision

7     of NOAA assessing a civil penalty or permit sanction which

8     is not subject to further agency review.

9        Under this part, and which is subject to collection

10    proceedings or judicial review in an appropriate federal

11    district court as authorized by law.

12       And where it says it's not subject to anymore agency

13    review, that's the final agency decision.

14         THE COURT:  Okay, but --

15         MR. GIEDT:  But for purposes of definition under

16    Paragraph 3....

17         THE COURT:  Okay.  Just so I'm clear on this:

18    your position is that even if the Court finds that final

19    administrative decision to be arbitrary and capricious --

20         MR. GIEDT:  Yes.  I'm listening, your Honor; I'm

21    trying to.

22         THE COURT:  Then the Court must give force to this

23    final administrative decision?

24         MR. GIEDT:  The Court should give effect to the

25    language that was bargained for by the parties.

1      THE COURT:  Which is another way of saying that the

2  Court should give effect to the things that may be found

3  arbitrary and capricious?

4      MR. GIEDT:  That may be, but the effective language

5  in the settlement agreement is what the parties agreed to.

6      THE COURT:  Okay.  Now, the final administrative

7  decision, that is, the question of finality, is not really

8  determined when the matter is under judicial review, is it?

9      MR. GIEDT:  The final agency determination?

10      THE COURT:  Right.

11      MR. GIEDT:  It is the final agency action, yes.  It

12  is the final agency determination.  It's not subject, it's

13  not subject to anymore agency review.

14      THE COURT:  Why would I do that?  I mean, apart from

15  your saying that it's incorporated in some fashion in what

16  is an awkwardly phrased Paragraph 3; at best, an awkwardly

17  phrased Paragraph 3.

18      MR. GIEDT:  Well, your Honor, once again, I come

19  back to the language.  Contracts are drawn up and settlement

20  agreements are drawn up all the time between the parties,

21  and at some point in time, as in this instance, one party

22  may not agree with the interpretation; but when you look at

23  the settlement agreement as a whole and you look at what

24  it's trying to accomplish and the language in it, this is

25  what the parties bargained for.

1       THE COURT:  So why as a matter of practice wouldn't

2   I simply say if the government prevails, the April 1 sanction

3   is imposed and the settlement sanction is imposed; both of

4   them are imposed, but after there's the opportunity for

5   judicial review?

6       MR. GIEDT:  You may very well decide that, your

7   Honor.

8       THE COURT:  No, no, I may; the question is:  why

9   shouldn't I?

10      MR. GIEDT:  Because I believe that what the parties

11  bargained for in the interpretation of the language is

12  that the Gloucester Fish Exchange has had the opportunity,

13  had the opportunity to negotiate the 2004 violation; and

14  they did it over a 12-month period, or, excuse me, the 2004

15  violation was vetted.  It went one way.  It went another.

16  It went up to the administrator.  It got remanded again.

17  It went to another ALJ, and it ultimately ended with the

18  administrator's determination saying:  I'm not taking

19  anymore action on this; this is it.  This is the final

20  agency action for purposes of 15 CFR 904.2.

21      THE COURT:  Even the administrator recognized that

22  she's neither final nor infallible in the context of

23  administrative review of such action.

24      She's not final because it's a matter for judicial

25  review, and the question of infallibility is to be

1    evaluated, it needs to be evaluated by judicial review.

2          MR. GIEDT:  It's final for the purposes of the

3    agency's proceedings so ... and we believe that was, that

4    was what was negotiated by the parties.

5          THE COURT:  Okay.  Now, just so I understand your

6    reading of this:  you'll agree that the language is somewhat

7    awkward with respect to the effective date?

8          MR. GIEDT:  No, I would not agree with your Honor.

9    The government believes that it's clear given, given the

10   nature of these types of cases.

11         THE COURT:  Well, we're dealing with what you argued

12   earlier with just the plain language of the document.  The

13   final administrative decision, even a wholly erroneous one,

14   that's, I guess, your reading of this ... so I just looked

15   at the language that is set down here.  That's all I'm

16   looking at now ... so now I've looked at the language that's

17   set down here, and just from the reading it bares a dramatic

18   reading:  "a substantial fishery violation will be deemed

19   to have occurred as of the effective date of a settlement

20   agreement or the effective date of a final administrative

21   decision."

22      What's the effective date of the final administrative

23   decision here?

24         MR. GIEDT:  It was April, April 1, 2000.

25         THE COURT:  Okay.  "And in which any of the

1   respondents is liable for a civil penalty of $10,000 or more

2   for any violation having been committed on any date within

3   the probation period"?

4           MR. GIEDT:  Yes, and you have to read the whole

5   sentence together, and --

6           THE COURT:  No, and I do, and it calls to mind, I

7   think it was the parody that Wolcott & Gibbs gave in Time

8   Magazine when it first started ... it had the similar odd

9   ways of phrasing things, "Backward came the sentences until

10  reeled the mind," that's the way this reads.

11     Now, it may be capable of an intelligent reading, but

12  that intelligent reading is not necessarily one that says a

13  substantial fishery violation will be deemed to have

14  occurred and then we have a definition of substantial

15  fishery violation, some distance from what it was supposed

16  to be modified?

17          MR. GIEDT:  We believe that it's clear; and when you

18  put the whole sentence structure together, it's clear that

19  it refers back to a violation which was -- it says a

20  substantial fishery violation shall have occurred.

21          THE COURT:  "Will be deemed to have occurred."

22          MR. GIEDT:  "Will be deemed to have occurred on the

23  effective date of a decision," that relates to a violation

24  that was committed within the probationary period; and if

25  you look at it within the context of the entire Paragraph 3,

1    which talks about suspending ten days of an agreed-upon

2    15-day violation as long as the, the exchange stays clean

3    for a year.

4          THE COURT:  Well, but it's not it stays clean, is

5    deemed by the administrative agency not subject to any kind

6    of review, administrative review to stay clean as you put it.

7          MR. GIEDT:  Well, no, there's a final agency decision

8    or settlement agreement here.  The parties could have, the

9    parties could have agreed to a settlement that would have

10   become effective the same way this settlement agreement was

11   and then alternatively they could have exercised their due

12   process rights as they did in this proceeding all the way

13   up to a final agency decision by the administrator, and the

14   administrator says:  I'm not going to review this anymore.

15         THE COURT:  I suppose he could.  The question is

16   whether or not that's an intelligent reading of this

17   paragraph, and, also, whether or not it has the effect of

18   obviating judicial review.

19      When you make something contingent upon a determination

20   that is subject to judicial review, and if you take the

21   hypothetical that judicial review vacates it, don't you

22   think it would be more than passing peculiar to permit the

23   enforcement of that?

24         MR. GIEDT:  No, because I think it's capable of the

25   interpretation that the agency is giving it, and it comes in

1    the nature of settlement agreements in general.

2        THE COURT:  But this is not a settlement agreement,

3    what you're making it contingent upon is something called

4    "final administration action."  Final administrative action

5    has to be lawful.

6     It's not something that the parties knock out among

7    themselves; it is something that is finally reviewed by a

8    court of competent jurisdiction, and so for someone to say

9    they can negotiate anything they want, that's fine, I

10    suppose; but once you implicate judicial review as you have,

11    or has been implicated in this case, then something else is

12    involved, and so it strikes me that a court order, directly

13    or indirectly, that validates something that is ultimately

14    not validated is not a solution to be sought here.

15        MR. GIEDT:  I don't disagree with the Court.  There

16    is logic to what the Court is interpreting.  It is one of

17    several interpretations.  It is one of two interpretations.

18    You have yours; the Court has its interpretation of what

19    possibly could occur here, the government has put forward

20    its interpretation of what we believe the contract and what

21    the parties agreed to.

22        THE COURT:  Well, let me put it in a different way

23    in terms of the language you stay.  What's it to the

24    government if this doesn't happen; if you don't get the

25    enforcement right now?  What loss is there to the

1    government?

2         MR. GIEDT:  It is the benefit of its bargain in terms

3    of what --

4         THE COURT:  Well, the benefit of its bargain is to

5    permit certain enforcement actions when there has been a

6    violation; and if there is no violation, back to nullity

7    again, then, how is the government to adjust this under

8    those circumstances?

9         MR. GIEDT:  Once again, it comes back to the contract

10   terms that were agreed to by the parties, and I know you

11   think that sounds, there are -- it's fraught with all sorts

12   of legal issues but if --

13        THE COURT:  It's not the legal issues themselves but

14   there's probably some additional issues for the government,

15   which requires or as the logo of the Department of Justice

16   says, you know:  justice is done when there are proper

17   proceedings carried out and the merits are properly

18   determined ... and so for the government to obtain a modest

19   advantage on the short term is a long-term undermining of the

20   kinds of things that the government's trying to procure.

21        MR. GIEDT:  But then again there's, there's the

22   settlement agreement, which is an agreement by the parties

23   which states two things --

24        THE COURT:  But go back to this:  apart from saying

25   we've got a settlement agreement, what difference does it

1   make to the government to have this enforcement take place

2   at this time?

3          MR. GIEDT:  Timing, perception, the fact that it can

4   carry out its job, and carry out its mission.

5          THE COURT:  Well, okay, so let's take timing and

6   perception ... now, timing for the larger sanction, which is,

7   the predicate, if it is, it is as soon as there's a final

8   judicial review, perhaps in this court, perhaps in another

9   court --

10         MR. GIEDT:  Yes.

11         THE COURT:  -- of the sanction?  So timing is not

12   quite so important.

13      Getting the job done the way it wants to get the job

14   done, I guess that's the underlying reason, that is free of

15   effective review; I'm not sure that's a goal that ought to

16   be necessarily supported.

17         MR. GIEDT:  The effect of enforcing the agency's

18   settlement agreements and the terms that it agreed upon in

19   settlement.

20         THE COURT:  Well, why isn't it simply that the agency

21   gets to get its way even if it wasn't justified?

22      And the hypothetical that I have here is not one that I

23   have any view on at all, I have no idea whether you're going

24   to be successful, but it seems to me that if something is,

25   and it's a larger sense, people outside look realistically

```
 1      in Paragraph 3 in some larger sense dependent on an ultimate

 2      determination, then I'm not sure that the government loses

 3      anything really except perhaps balance of an advantage of

 4      some press war that's being carried on between parties in

 5      this case for the plaintiffs and the government.

 6              MR. GIEDT:  But those collateral issues aside, your

 7      Honor --

 8              THE COURT:  Well, those are the collateral issues

 9      that you interjected.

10              MR. GIEDT:  No.

11              THE COURT:  Which is to see that they're getting

12      their job done.

13              MR. GIEDT:  And I come back to the root of the

14      settlement agreement ... while your interpretation or the

15      Court's interpretation is entirely one way of looking at it,

16      I believe that the agency's way of looking at it is

17      equally....

18          Parties come together all the time and decide on

19      things.  They take risks in settlement agreements, and the

20      government's argument here is that this was a 12-month

21      process.

22          I mean, it took 12 months to negotiate this settlement,

23      and that's what the parties bargained on.  The settlement

24      agreement or a final agency action -- final agency decision

25      and a defined term under the regulations; and in addition to
```

1    that, the exchange agreed to not have any notice for having

2    to serve the 10-day sanction.

3        That's what the parties agreed to in Paragraph 3, and

4    although I respect the Court's interpretation, I also think

5    that Paragraph 3 is equally subject to the agency's

6    determination, and it's the agency that entered into the

7    agreement.

8            THE COURT:  Not to be too cute about it, but would

9    it be a jump-ball between the court and the agency --

10           MR. GIEDT:  You win.

11           THE COURT:  So now I guess I go back to the more

12   practical question:  is there anything that would cause real

13   recognizable harm to the government to delay this sanction

14   until a final determination of an equal sanction?

15           MR. GIEDT:  The biggest cause would be the fact that

16   the government believes it's clear what was bargained for

17   and likes to enforce its agreements as they stand, and its

18   inability to do that sends the wrong signal in the

19   constituency that is regulated.

20           THE COURT:  Well, you know, one of the problems with

21   this is playing it out, not in the legal context, but in the

22   press or with elected officials who have their own, you know,

23   understandable interests in currying favor with their

24   constituents, that what is said in the press or what can

25   animate elected officials constitutes law.  And what we're

1    dealing with here is a legal case, and it happens all the

2    time.  You get judicial reviews all the time, and, generally,

3    we try to leave it to people who are not trying to make

4    favor in the press to make the determination.

5         MR. GIEDT:  That occurs, and a lot of the press

6    collateral issues have occurred here, but I distinguish that

7    from the agency's mission in regulating --

8         THE COURT:  Well, it's a mission but it's a mission

9    to do it consistently with legal principles like the

10   Administrative Procedure Act.

11        MR. GIEDT:  But as we've noted in our brief, the

12   government's free to negotiate settlements as it's done here.

13        THE COURT:  It's certainly free to negotiate

14   settlements, but this wasn't a settlement; that is, the

15   agreement to have ten days subject to a final administrative

16   determination.

17     What's triggering this is what you say is the final

18   administrative determination, which is, as yet, not final ...

19   because it has not been affirmed by a court to which it has

20   been called to question in a timely fashion.

21        MR. GIEDT:  Like I said, the Court wins, but I had

22   read for you the text of the regulation.  The regulation says

23   the agency's not going to do anything more than that.

24        THE COURT:  Right.

25        MR. GIEDT:  And that's the final administrative

1    decision which we bargained for.

2            THE COURT:  Well, I think we've probably exhausted

3    our discussion on it.

4            MR. GIEDT:  Yes.

5            THE COURT:  So let me understand a little bit from

6    the plaintiff's view.  In trying to read the case citations,

7    you've cited in Rio San Marcos, and I looked at the Westlaw

8    citation for it, and that's a patent, and I assume that that

9    probably is not the right citation.

10           MR. MUNIZ:  I'll be certain to get you the right

11   citation.

12           THE COURT:  Okay.  Now, is there any question that

13   the government, if it's successful here in the sense of

14   prevailing against your challenge to the final

15   administrative action, is entitled to these two sanctions?

16           MR. MUNIZ:  Yes.  I believe there is a challenge to

17   that, your Honor, and I believe it's the language that's

18   contained in the agreement in Paragraph 3 about the timing.

19           THE COURT:  Okay, but let's put that to one side,

20   okay?  This dispute about effectively, assume that I'm

21   inclined to believe that the effective date means a

22   violation that took place within the 12-month period

23   following the date of the settlement, because that's the

24   only sensible way to look at this:  is there any dispute

25   then if I find that there would be two sanctions:  one, the

1    April 1 sanction, and the other that flows from the second

2    settlement?

3         MR. MUNIZ:  If one flows from the settlement, yes,

4    the 10-day probation period and any sanction that flows from

5    the 2004 violation.

6         THE COURT:  Okay, but apart from awkwardly reading

7    this, why would I read that statement in that way?  I mean,

8    it takes NOAA apparently five years to get to a final

9    administrative action.

10        MR. MUNIZ:  It doesn't always take five years to

11   get to a final administrative action, and part of what we

12   bargained here for is finality.

13        THE COURT:  This is an odd kind of -- I mean, I

14   understand the parties believed they bargained for something

15   or that they argued for something, but now let's talk in

16   terms of common sense ... in terms of common sense, how

17   could anybody read that to say even if you committed a

18   violation within that 12-month period, you're home free?

19   I know I'd have to read the whole paragraph --

20        MR. MUNIZ:  And there is a provision there for

21   possibility of a settlement.

22        THE COURT:  But a settlement certainly could, there's

23   no question about that.

24        MR. MUNIZ:  I just --

25        THE COURT:  Just a moment.  We're now dealing with a

1    final administrative action.  How could anyone perceive that

2    in the ordinary course, given what it apparently takes NOAA

3    to do, time to do, that there could be a final

4    administrative action with respect to a contested violation?

5         MR. MUNIZ:  I agree that it's highly unlikely, but

6    it's not beyond the realm ... so if it's not beyond the

7    realm, my client is certainly entitled to read that as

8    providing the finality that it bargained for; and, you know,

9    the government's argument about a final administrative

10   decision coming within a year actually plays to my client's

11   interpretation.

12        THE COURT:  But it doesn't by getting both yourself

13   and them turned around and meet yourself, leaving some

14   incongruity right in the middle, so I'm clear on this then:

15   do you agree that final administrative decision means the

16   last decision made by the administrator?  That's what it

17   actually says.

18        MR. MUNIZ:  That's what it says.

19        THE COURT:   Okay.  So is it your view that's what

20   it means; that, for instance, if I read this in the contorted

21   fashion the way you'd like me to read it, which is to say,

22   that this effective date is really focused on the date of

23   the violation itself, not the date of the determination,

24   that what causes the contingency as the final administrative

25   determination defined in the way in which the government

1    does in Footnote 3 to its brief?

2            MR. MUNIZ:  Well, I think you see the point here.

3    Both parties are arguing for a literal reading of the

4    agreement, yet neither one --

5            THE COURT:  A strained and --

6            MR. MUNIZ:  Awkward?

7            THE COURT:  Awkward and ultimately nonsensical

8    interpretation of the agreement.  I don't know; it just

9    doesn't make any sense to me.  I mean, my grandmother grew

10   up in the Pennsylvania Dutch area.  This language reads as

11   if it's translated from Pennsylvania Dutch.

12           MR. MUNIZ:  Perhaps if we looked at it a different

13   way by striking the so-called operative language, then I

14   think it would be clear or the government's position would

15   be more clearly aligned with the language ... so if you

16   struck the language where we deem to have occurred as of the

17   effective date all the way through the end of 9/04, I took

18   the liberty of doing that; I could pass it around?

19           THE COURT:  No, it's a little late for you to be

20   doing that, and it's improper for me to.

21           MR. MUNIZ:  Okay, but that's essentially what we

22   argued.

23           THE COURT:  And you got this language here and, you

24   know, a way of reading it is perhaps to reorganize the

25   order of the sentence so it no longer comes backwards; I

1     mean, to say something along the lines of:  as of the

2     effective date a substantial fishery violation would have

3     been deemed to have occurred for any violation having been

4     committed within the probationary period.  That's what it

5     really means.

6                MR. MUNIZ:  That wasn't quite the point I was trying

7     to make.

8                THE COURT:  I know it wasn't, but that seems to me

9     to be the proper way to read this thing.

10         It makes no sense at all to read it to have the

11    violation turn on the determination date for a final

12    administrative action.  That's it, and I don't know any

13    practical explanation for it, that they get a pass, I mean,

14    on a violation committed within a year of the settlement

15    agreement?

16               MR. MUNIZ:  I'm sorry.  It requires both, and

17    that's how we view it, so we agree that it's conduct within

18    a year and a final administrative decision within a year.

19               THE COURT:  Okay.  Anything else?

20               MR. MUNIZ:  No, your Honor.

21               THE COURT:  Okay.  Well, I am going to grant the

22    injunctive relief that is requested; although, perhaps not

23    for reasons that will be satisfactory to either party.

24         The arguments regarding the meaning of the text,

25    particularly, Paragraph 3 of the settlement agreement, are

arguments that only lawyers could apply consisting of

strained and contorted readings of language to achieve

results that may or may not be favorable to their clients.

The Court is required to take a more practical,

common-sensical view of the language, and I do so.

My own view is that with respect to the first part of

the evaluation of likelihood of success on the merits, the

government is likely to be successful on the merits.

That is to say, that if the government can establish a

substantial fishery violation that occurred within one year

of the settlement agreement, then they will be entitled to

enforce their proposed sanction; that's only the first part.

The second part is:  at what point do we determine

whether or not they have made that showing?  The government

says it's enough that they decided to do no more in the

administrative proceeding in the sense that the

administrator was satisfied ultimately and to declare that

the last action was the final action of the agency on

April 1; but once a matter is put into dispute through

judicial review, it's not final.

Now, it is the case that as a default principle a party

must move for a stay or what in this language is called a

preliminary injunction or a preliminary restraining order;

but, here, even as a matter of policy, the agency, and its

principal can find administrative action stayed pending

1    judicial review; and I intend that this stay extend to

2    the collateral contingent additional sanction that is

3    contemplated by here in the settlement agreement.

4         So my view is that as to timing, the plaintiff has the

5    likelihood of success on the merits, but the question of

6    success on the merits still remains to be determined.

7         Now, I look at the other factors that are implicated

8    here.  First, the harm to the plaintiff if the injunction is

9    not provided.

10        I've been presented with various materials suggesting

11   that there would be difficulties obtaining it in the fishing

12   industry if the plaintiff is shut down for a period of time,

13   and I'm less concerned with that because that, it seems to

14   me, is right at the core of the ultimate determination in

15   this case, which is, whether or not the action of the agency

16   is arbitrary and capricious.

17        The harm to the plaintiff is that this decision is made

18   and the consequences visited before there has been final

19   judicial review; that, it seems to me, is a real harm, but

20   if, ultimately, there is a determination that the decision

21   of NOAA is not arbitrary and capricious, not otherwise

22   unlawful, then, of course taking into consideration the

23   proportionality of the sanction that's imposed, which is an

24   arbitrary and capricious evaluation, then the plaintiff has

25   nobody to blame but itself for having engaged in a violation

1    if that's determined; but for these present purposes, the

2    plaintiff would be harmed if, before there is a final

3    judicial review, a sanction were visited upon it.

4        Turning to harm to the government or harm to the

5    defendant, I don't see any harm in the stay of their

6    sanction until there's judicial review.

7        In the larger sense, if the government prevails, then

8    justice is done; and it strikes me that while the case is

9    still pending before judicial review, we don't know whether

10   or not what the government is seeking justice in this case

11   or at least is authorized by the Administrative Procedure

12   Act.

13       The secondary issues, this kind of a collateral war that

14   the parties have been engaged in through pleas to elected

15   officials, the initiation of the Inspector General's review,

16   and the perception that the government didn't get what it

17   wanted when it wanted it are indifferent; that is indifferent

18   in this setting.

19       What is critical is for a determination whether or not

20   the government has been harmed by some intentional injustice

21   or by somebody who was willing to do something, and in the

22   time period that is contemplated by the Administrative

23   Procedure Act, and I see no harm there to the government in

24   staying this.

25       Finally, I turn to the public interest.  Well, the

1  public interest, I suppose you could say is supposed to be

2  expressed by the government.

3      There are alternative public views that are being

4  expressed in various ways by elected officials writing

5  letters and making motions.

6      But those are not of public interest -- what's critical

7  here, the public interest is making a fair determination of

8  the legalities of the sanctions that the government seeks to

9  impose, and that must await final judicial review which

10  occurs first in this Court and perhaps in another court if

11  it becomes necessary, but the short of it is public interest

12  is not embodied by letter-writing campaigns on the part of

13  elected officials induced by constituents nor by the

14  government's saying:  We are the government.

15      Public interest here lies in, as I've indicated, a fair

16  and impartial judicial review and determination of the

17  validity of the determination that's been made by the agency

18  and that awaits further development in this setting.

19      So what's going to happen is a determination of whether

20  or not of, one, set of sanctions and determinations are

21  valid, and if they are, then, the sanctions will flow not

22  merely from one determination, but also from the earlier

23  settlement agreement that I have construed here today in the

24  course of making a determination about likelihood of success

25  on the merits.

1     Now, do we have any better understanding of what the

2     timing is for the creation of the administrative record, an

3     estimate?

4          MR. GIEDT:  The agency's attempting to mark it to

5     the 45-day period to pull the administrative record together.

6     That's our sense right now.  If we need more time, then we'll

7     let the Court know, if not, as soon as possible, but that's

8     what they've told me.

9          THE COURT:  All right.  Anything else that we need

10    to take up?

11         MR. MUNIZ:  I don't believe so, your Honor.

12         MR. GIEDT:  Just to be clear, your Honor, the

13    government, in terms of the 10-day sanction imposed, that

14    the government is prevailing on the merits of that, should a

15    determination on the 2004 violation be upheld?

16         THE COURT:  That's my view, present view, on that,

17    but it's, of course, contingent on the larger determination.

18         MR. GIEDT:  No, I understand that.  I was just

19    saying that the interpretation of Paragraph 3 to impose a

20    10-day sanction, if it's determined ultimately that a

21    violation occurred within a one-year probation period, that

22    interpretation is being, is being upheld?

23         THE COURT:  Yes, that's my view with respect to it,

24    but I'm doing it on a preliminary injunction basis; that is,

25    not on the success of the merits, because I'm going to fold

1    it into the ultimate determination in the case, but whether

2    it's a final determination or a preliminary determination,

3    it's subject to judicial review itself at this stage.

4         MR. GIEDT:  Okay.  Just one other thing at the risk

5    of, on this issue of whether the party can --

6         THE COURT:  What's the risk, the unstated risk?

7         MR. GIEDT:  Well, the risk of making sure I covered

8    everything because we did not cover it in our brief.  Maybe

9    I should have, but I didn't; I didn't anticipate the Court

10   going into the direction of the ultimate -- the ultimate

11   determination on the 2004 violation.

12       There's some case law in this district on the waiver

13   of appellate rights and allowing lower, lesser bodies to

14   make determinations and the parties agreeing to that.

15       The parties would be willing to brief that issue, and

16   I only raise that because we had a dialogue of the Court's

17   interpretation and the agency's interpretation, and I would

18   point out that even in the exchange briefs, they said if

19   the determination had been -- if the violation had occurred

20   within a year and the final agency administration, final

21   agency administration decision, had been issued within a

22   year, that would have met the criteria under their

23   interpretation, which raises the possibility of the

24   government's argument that this is what the parties

25   bargained for.

1          THE COURT:  I guess the only way to do that is if

2     you think that, then you present it in connection with the

3     briefing on the merits of the case itself.

4        I have to say that inconsistent views about how literally

5     one reads Paragraph 3 by the parties is from my perspective,

6     in fact, a non-issue, so I view that paragraph as supporting

7     it in one sense the government's position; in another sense,

8     the plaintiff's position.

9        It doesn't mean that the parts that I haven't embraced

10    are inconsistent, sufficient to give rise to a waiver of

11    appellate rights.

12       I don't know.  I mean, if you can convince me that

13    there's some sort of judicial estoppel perhaps that's

14    involved here, but I don't in any way mean to suppress

15    imagination in this area, but people should make choices

16    about what is a useful expenditure of their time and

17    resources in raising arguments.

18          MR. GIEDT:  Understood, your Honor; I just wanted to

19    ask the question.

20          THE COURT:  Thank you, we'll be in recess.

21          THE CLERK:  All rise....

22          (Whereupon, the proceedings concluded at 4:30 p.m.)

23

24

25

1          C E R T I F I C A T E

2

3        I, Helana E. Kline, a Registered Merit Reporter,

4    Certified Realtime Reporter, and Federal Official Court

5    Reporter of the United States District Court, do hereby

6    certify that the foregoing transcript, from Page 1 to

7    Page 40, constitutes, to the best of my skill and ability,

8    a true and accurate transcription of my stenotype notes

9    taken in the matter of Gloucester Fish Exchange, Inc. v.

10   Gary Locke, et. al.

11

12

13

14

15

16

17

18

19

20

21

22

23       /s/ Helana E. Kline                July 31, 2009

24       Helana E. Kline, RMR, CRR

25       Federal Official Court Reporter